# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROBERT C.[1],                                  Case No. 2:22-cv-2391
        Plaintiff,                          Litkovitz, M.J.

vs.

COMMISSIONER OF                          **ORDER**
SOCIAL SECURITY,
        Defendant.

Plaintiff Robert C. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13) and the Commissioner's response in opposition (Doc. 15).

## I. Procedural Background

On June 7, 2019, plaintiff protectively filed his applications for DIB and SSI alleging disability since September 28, 2016, due to a 2004 injury which broke his C5, C6, and C7 vertebrae in his neck and T1 and T2 vertebrae in his back, surgery of his lower back in 2016, and an underactive thyroid. (Tr. 231). The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Francine A. Serafin. Plaintiff, represented by counsel, and a vocational expert ("VE") appeared telephonically and testified at the ALJ hearing on January 19, 2021. On March 31, 2021, the ALJ issued a decision denying plaintiff's DIB and SSI

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

applications. (Tr. 18-39). This decision became the final decision of the Commissioner when the Appeals Council denied review on March 30, 2022. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2017.

2. The [plaintiff] has not engaged in substantial gainful activity since September 28, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: spinal stenosis, interior listhesis, status post lumbar laminectomy and fusion, status post anterior cervical fusion surgery, pseudo-arthrosis after fusion, and sacroiliitis (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except this individual can stand and/or walk for 4 hours in an 8 hour work day with normal breaks and sit for 6 hours in an 8 hour workday. He can frequently climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. This individual must avoid all exposure to excessive vibrations and all workplace hazards, such as moving machinery or unprotected heights.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565

and 416.965).[2]

7.  The [plaintiff] was born [in] . . . 1982 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The [plaintiff] has a limited education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 28, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-34).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was as a carpenter's apprentice (rough carpenter), a skilled, heavy position.  (Tr. 32, 57).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cashier (30,000 jobs nationally - which includes a 5% reduction due to the plaintiff's need to stand and/or walk for only 4 hours in an 8-hour workday), office helper (10,000 jobs nationally), and courier/delivery person (18,000 jobs nationally).  (Tr. 33, 58-59).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Medical Evidence

On September 30, 2016, plaintiff underwent a L5-S1 posterior lumbar interbody fixation and fusion with Dr. William Zerick. (Tr. 527-34; *see also* Tr. 456). A November 8, 2016 x-ray showed interval posterior decompression and fixation with interbody fusion at L5-S1. (Tr. 481).

On February 9, 2017, plaintiff reported "continued improvement in his low back pain with continued complete resolution of his radicular leg pain." (Tr. 458). Plaintiff further reported he was doing physical therapy three times per week and felt he was "markedly improved from where he was at his last visit." (*Id*.). On physical examination, plaintiff had no swelling, tenderness, or warmth with a clean and dry wound; he had 5/5 motor strength in his bilateral lower extremities, he had a normal gait and stance; and he was ambulating with no assistive device. (*Id*.). Plaintiff had a follow-up appointment with physician's assistant Shannon

Corcoran on August 10, 2017. (Tr. 452-54). Plaintiff reported he was "doing very well, with continued improvement in his low back pain." (Tr. 454). Plaintiff stated the surgery was "life changing" and he was doing "so much better[.]" (*Id*.). Plaintiff further reported he was "able to get back to work" and although he had "some low back pain with prolonged sitting and standing," he felt he was "continuing to improve." (*Id*.). Plaintiff denied pain, numbness, tingling, or weakness in his hips, buttocks, or legs. (*Id*.). On physical examination, plaintiff had no swelling, tenderness, or warmth with a clean and dry wound; he had 5/5 motor strength in his bilateral lower extremities; he had a normal gait and stance; and he was ambulating with no assistive device. (*Id*.).

There is no indication of further treatment until June 7, 2019, when plaintiff was treated in the emergency department with a complaint of low back pain. (Tr. 337-42). Plaintiff stated he had "been doing a lot of manual labor and roofing for the last 4 or 5 weeks." (Tr. 337). On physical examination of plaintiff's back, emergency room physicians reported plaintiff had right SI area tenderness to palpation but no CVA (costovertebral angle) or vertebral tenderness. (Tr. 340). Plaintiff had no radicular symptoms. (Tr. 341). X-rays showed intact hardware with no migration. (*Id*.). Emergency room physicians believed plaintiff's manual labor, such as "improving shingles and doing roofing work quite a bit . . . exacerbated his symptoms." (*Id*.).

On September 27, 2019, plaintiff presented to the emergency room department following a motor vehicle accident. (Tr. 322). Plaintiff reported tight and worsening pain on the right side of his lower back. (*Id*.). Physical examination revealed CVA and vertebral tenderness, decreased range of motion, and left paraspinal tenderness to palpation. (Tr. 324-25). Plaintiff's x-ray "was concerning for [a] possible broken screw in the lower back," but CT scans did not

appear to show the broken screw. (Tr. 326). Plaintiff was discharged with instructions to follow up with his spinal surgeon. (*Id*.).

Seven months later, on April 28, 2020, plaintiff had a virtual telemedicine appointment with Dr. Zerick. (Tr. 486). Plaintiff reported worsening of his symptoms and severe low back pain following a September 2019 motor vehicle accident. (*Id*.). Dr. Zerick reviewed plaintiff's September 27, 2019 CT scan which showed postoperative changes in the L5-S1 hardware, solid arthrodesis at L5-S1, and 1-2 mm of retrolisthesis of L4 on L5. (*Id*.). Dr. Zerick noted an x-ray taken the same date revealed a fracture of one of the S1 pedicle screws. (*Id*.). Additional x-rays were ordered. (*Id*.).

Plaintiff had a follow-up virtual telemedicine appointment with Dr. Zerick on June 23, 2020. (Tr. 490-91). Dr. Zerick reviewed May 6, 2020 lumbar flexion and extension films which demonstrated retrolisthesis of L4 on L5 with movement of approximately 2 mm on flexion and anterior fishmouthing. (Tr. 491). Dr. Zerick discussed a L4-5 decompression with fixation and fusion with redo fusion at L5-S1 with placement of bilateral S2 alar screws with image guidance and robotic assistance. (*Id*.). Plaintiff was diagnosed with pseudarthrosis after fusion or arthrodesis, lumbar spine instability, and spinal stenosis of the lumbar region. (*Id*.).

Plaintiff underwent lumbar surgery performed by Dr. Zerick in July 2020. (*See* Tr. 614; *see also* Tr. 535). A July 30, 2020 CT scan of plaintiff's lumbar spine showed postsurgical changes at L5-S1, no recurrent disc protrusion or canal stenosis, and incomplete bony fusion across the posterior elements at L5-S1. (Tr. 660). Plaintiff had a follow-up appointment with Licensed Practical Nurse Dianne Murdock on October 27, 2020. (Tr. 614-15). Plaintiff reported constant low back pain that radiated to the left lower extremity with a shock sensation and associated numbness. (Tr. 614).

7

Plaintiff participated in physical therapy for his back pain from September 24, 2020, to October 22, 2020 (Tr. 618-55).  On November 4, 2020, plaintiff had a follow-up appointment with Dr. Phill Immesoete, in which plaintiff reported shocking pain that radiated from his buttocks down the posterior aspect of the left leg.  (Tr. 673).  Plaintiff also reported diffused weakness that was improving.  (*Id*.).  On physical examination, Dr. Immesoete noted plaintiff had 5/5 motor strength, normal muscle tone in his upper and lower extremities, normal muscle bulk, and normal gait/posture.  (Tr. 673-74).  Dr. Immesoete referred plaintiff for lumbar epidural steroid injections.  (Tr. 674).  Plaintiff had a bilateral sacroiliac joint injection under fluoroscopy performed on November 6, 2020.  (Tr. 606).

Plaintiff had a virtual telemedicine appointment with Dr. Immesoete on November 18, 2020.  (Tr. 665-69).  Dr. Immesoete recommended removal of the left L5 screw based on review of imaging results.  (Tr. 669).  Plaintiff indicated his approval of the removal of the left L5 screw, and Dr. Immesoete ordered an updated lumbar MRI with and without contrast, which was taken on December 2, 2020.  (*Id*.; *see* Tr. 685).  The record shows plaintiff had surgery on December 10, 2020 for removal of the left L5 screw.  (See Tr. 684; 675).  An x-ray of plaintiff's lumbar spine on January 6, 2021 showed an abandoned fractured left S1 pedicle screw fragment. The hardware and alignment appeared similar to the December 10, 2020 intraoperative images. (Tr. 676).

### E.  Specific Errors

On appeal, plaintiff alleges (1) the ALJ erred at step three of the sequential evaluation process by failing to find that plaintiff's impairments met or equaled the requirements of Listing 1.04A, and (2) the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence because plaintiff cannot perform the standing and walking requirements of "light

work." (Doc. 13). In response, the Commissioner argues the ALJ's step three finding is supported by substantial evidence, and the ALJ properly evaluated the medical evidence of record in formulating the RFC. (Doc. 15).

### 1. Whether the ALJ's step three finding is supported by substantial evidence

### a. Step three of the sequential evaluation process

At step three of the sequential evaluation process, the claimant carries the burden to show he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4)(iii).[4] If a claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. § 404.1520(d)-(e); *see also Rabbers*, 582 F.3d at 653 ("A claimant must satisfy all of the criteria to meet the listing.").

The ALJ must "actually evaluate the evidence," compare it to the requirements of the relevant listing, and provide an "explained conclusion, in order to facilitate meaningful judicial review" of a step three finding. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). If a claimant's impairment does not meet a listed impairment, the claimant will still be found disabled at step three if his impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii). To be the medical equivalent of a listed impairment, a claimant's impairment must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). The claimant bears the burden of presenting "medical

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

findings equal in severity to *all* the criteria for the one most similar listed impairment" to establish equivalency. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in the original). The ALJ is required to compare the medical evidence with the components of listed impairments in considering whether the condition is equivalent in severity to the medical findings for a listed impairment. *See Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006). When performing this analysis, the ALJ must "consider all evidence in [the] case record about [the claimant's] impairment(s) and its effects on [the claimant] that is relevant to this finding." 20 C.F.R. § 404.1526(c).

Listing 1.04A covers "Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04.[5] Listing 1.04A requires that the disorder of the spine be accompanied by:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). . . .

*Id*. Thus, to satisfy paragraph A, plaintiff must demonstrate he suffers from a disorder of the spine and show: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; (3) motor loss (atrophy with associated muscle weakness or muscle weakness); (4) sensory or reflex

---

[5] Listing 1.04, and the accompanying Social Security Acquiescence Ruling ("AR") 15-1(4), were rescinded by the Social Security Administration on April 2, 2021. (*See* Notice of Rescission of Acquiescence Ruling 15-1(4), https://www.federalregister.gov/documents/2020/12/08/2020-26911/rescission-of-acquiescence-ruling-15-14 (last visited Apr. 7, 2023)). The ALJ issued the decision in this matter on March 31, 2021, several days before the recission of Listing 1.04 and AR 15-1(4). Plaintiff does not argue that the ALJ applied the wrong legal standard at step three of the sequential evaluation process. Rather, plaintiff argues the ALJ erred in finding plaintiff's impairments did not meet or medically equal Listing 1.04A. Accordingly, the Court finds that the ALJ properly cited to, and relied upon Listing 1.04A and AR 15-1(4) at step three of the sequential evaluation process.

loss; and, because plaintiff's lower back is involved, (5) positive straight leg raise test, in both

the sitting and supine positions.  *Id*.  *See also* AR 15-1(4), 2015 WL 5697481, at *4 (Sept. 23,

2015).

To satisfy Listing 1.04A, plaintiff must produce evidence of simultaneous, sustained

symptoms of nerve root compression set forth in the that listing.[6]  AR 15-1(4), 2015 WL

5697481, at *5 (rescinded on April 2, 2021).  The policy as set forth in AR 15-1(4) requires:

> [F]or a disorder of the spine to meet listing 1.04A at step three in the sequential
> evaluation process, the claimant must establish the simultaneous presence of all the
> medical criteria in paragraph A.  Once this level of severity is established, the
> claimant must also show that this level of severity continued, or is expected to
> continue, for a continuous period of at least 12 months. . . .

*Id*.

> On the other hand, when the listing criteria are scattered over time, wax and wane,
> or are present on one examination but absent on another, the individual's nerve root
> compression would not rise to the level of severity required by listing 1.04A.  An
> individual who shows only some of the criteria on examination presents a different,
> less severe clinical picture than someone with the full set of criteria present
> simultaneously.  To meet the severity required by the listing, our policy requires
> the simultaneous presence of all of the medical criteria in listing 1.04A.

*Id*., at *4.

---

[6] Plaintiff also alleges the evidence of record satisfies the "second requirement of Listing 1.04, which is documentation of an inability to ambulate effectively as a result of the impact of the medical condition." (Doc. 13 at PAGEID 802).  Plaintiff argues the medical evidence of record "consistently documents [plaintiff's] difficulty with sustained ambulation due to low back pain; bilateral radicular pain, weakness, and inflammation." (*Id*. at PAGEID 803, citing Tr. 445, 454, 458, 463, 481, 486, 490-91, 594, 618-19, 750).  It is clear, however, that Listing 1.04A does not require a claimant to prove that his or her impairments results in the inability to ambulate effectively. (*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04A).  *See also Pickrell v. Comm'r of Soc. Sec*., No. 2:20-cv-5478, 2021 WL 5917125, at *5 (S.D. Ohio Dec. 14, 2021) (finding the ambulation criteria not relevant to Listing 1.04A).  Although paragraph C of Listing 1.04 requires a claimant to establish the "inability to ambulate effectively" (20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04C, plaintiff's statement of specific errors concerns only paragraph A: "[Plaintiff] has put forth sufficient evidence to demonstrate that his impairments meet and/or equal Listing 1.04A." (Doc. 13 at PAGEID 801; *see also Id*. at PAGEID 800, 803).  Moreover, the ALJ expressly found that "the record evidence fails to establish spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication" (Tr. 26), which encompasses the requirements described in Listing 1.04C, and plaintiff does not challenge this finding in the statement of specific errors.  Accordingly, to the extent plaintiff references evidence dealing with a lack of ambulation, these findings are not relevant to the determination of whether the ALJ erred at step three of the sequential evaluation process concerning Listing 1.04A.

11

This Court has affirmed ALJ decisions where the record did not show "consistent and continuous symptoms that matched all Listing 1.04A criteria for a 12-month period." *Reed v. Comm'r. of Soc. Sec.*, No. 17-cv-22, 2017 WL 6523295, at *6 (S.D. Ohio Dec. 21, 2017), *report and recommendation adopted*, 2018 WL 1522076 (S.D. Ohio Mar. 28, 2018) (citing *Irvin v. Comm'r of Soc. Sec.*, No. 1:12-cv-837, 2013 WL 3353888, at *10 (S.D. Ohio July 3, 2013)) (ALJ's conclusion that certain medical findings were not sufficiently consistent to satisfy the Listing was supported by substantial evidence, despite evidence of positive straight-leg raising test results, reduced strength and reflexes, loss of sensation, antalgic gait, spasm, and reduced range of motion). *See also Brauninger v. Comm'r of Soc. Sec.*, No. 18-3495, 2019 WL 2246791 (6th Cir. Feb. 25, 2019) (some positive findings of symptoms required by Listing 1.04A were insufficient where there was no evidence of nerve root compression and other findings related to other symptoms required under the listing were normal); *Gully v. Comm'r of Soc. Sec.*, No. 1:16-cv 923, 2017 WL 4329632 (S.D. Ohio Aug. 3, 2017) (ALJ's decision was substantially supported where some records showed normal findings of no atrophy and normal strength and tone);

### b. The ALJ's step three finding

In finding plaintiff's impairments did not meet or medically equal Listing 1.04A at step three of the sequential evaluation process, the ALJ stated:

> The claimant's degenerative disc disease fails to meet or medically equal Listing 1.04 (Disorders of the spine). The record evidence fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory reflex loss, and positive straight leg raising in both the sitting and supine positions (Exhibit 3F, page 12). Furthermore, the record evidence fails to establish spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication. The claimant was diagnosed with spinal stenosis of the lumbar region in September 2016 (Exhibit 1F). Subsequently, the claimant had a lumbar fusion. The three-month follow-up examination indicated his low back pain with complete resolution of radicular leg pain. Physical therapy

had been helpful (Exhibit 1F). A computed tomography (CT) scan of the lumbar spine in July 2020 established no recurrent disc protrusions or canal stenosis (Exhibit 4F, page 19).  The undersigned [ALJ] has considered AR 15-1(4) and finds that the evidence does not show that all of the medical criteria in paragraph A were present within a continuous 12-month period or are expected to continue to be present for a 12-month period and/or that even if all of the medical criteria in paragraph A are present within a continues 12-month period (or are expected to be present), the evidence as a whole does not establish that the claimant's disorder of the spine caused, or is expected to cause, nerve root compression continuously for at least 12 months.  Accordingly, the undersigned [ALJ] finds that the claimant's degenerative disc disease fails to meet listing level severity.

(Tr. 26-27).

### c. Analysis

Plaintiff argues the ALJ's Listing finding is not supported by substantial evidence because the ALJ did not "evaluate the medical evidence, compare that evidence to the Listings, and provide a detailed explanation of his conclusion that the Listings were not met or equaled." (Doc. 13 at PAGEID 803, citing *Reynolds*, 424 F. App'x at 415-16).  In *Reynolds*, the Sixth Circuit concluded that the ALJ erred by not conducting any step three evaluation of the claimant's physical impairments after the ALJ found the claimant had the severe impairment of back pain.  *Reynolds*, 424 F. App'x at 415-16.  The Court of Appeals explained, "Put simply, [the ALJ] skipped an entire step of the necessary analysis.  He was required to assess whether [the plaintiff] met or equaled a Listed Impairment . . . but did not do so."  *Id*. at 416.  Here, however, the ALJ expressly considered whether plaintiff's physical impairments met or equaled Listing 1.04A.  (Tr. 26-27).  Therefore, "the ALJ here, unlike the ALJ in *Reynolds*, did not skip a step in the disability determination process."  *Jennifer L.S. v. Comm'r of Soc. Sec.*, No. 2:20-cv-6282, 2022 WL 190052, at *6 (S.D. Ohio Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 356693 (S.D. Ohio Feb. 7, 2022).  Accordingly, plaintiff's reliance on *Reynolds* for the

contention that the ALJ's step three finding is not supported by substantial evidence is inapposite.

In any event, even where the ALJ provides a cursory Listing finding, the Court may uphold that finding if the ALJ's findings at other steps of the sequential evaluation process provide a sufficient basis for her conclusion. *Forrest v. Comm'r of Soc. Sec.,* 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) ("looking to findings elsewhere in the ALJ's decision to affirm a step-three medical equivalency determination, and finding no need to require the ALJ to 'spell out every fact a second time'")). Moreover, where the ALJ's step three finding lacks adequate support, the error is harmless where the plaintiff has not shown that his impairments met or medically equaled the severity of any listed impairment. *Id.* at 366 (citing *Reynolds,* 424 F. App'x at 416). *See also Ison v. Comm'r of Soc. Sec.*, No. 2:16-cv-00464, 2017 WL 4124586, at *6 (S.D. Ohio Sept. 18, 2017).

Plaintiff argues the ALJ's Listing 1.04A finding is not supported by substantial evidence because the medical evidence of record establishes "a disorder of the spine that results in a compromise of the nerve root and there is evidence of neuro-anatomic distribution of pain and limitation of motion of the spine." (Doc. 13 at PAGEID 804). Plaintiff contends the objective and physical examination evidence satisfy the Listing 1.04A requirements.

The objective and clinical examination findings cited by plaintiff do not show the requisite evidence of nerve root compression continuously for at least 12 months. Plaintiff argues that imaging results from 2019 to 2021 show "stable postoperative changes, with mild disc space narrowing at L5-S1"; "prior L5 decompressive laminectomy with L5-S1 fusion"; "grade 1 anterolisthesis of L5 on S1"; "post-surgical changes status post laminectomy and posterior interbody fusion at L5-S1 with grade 1 anterolisthesis measuring 8mm"; "one of the

14

pedicle screw at L5 extends to the superior cortex of the L5 vertebral body also seen on the prior CT"; "bilateral L4, right L5 and bilateral sacroiliac screws"; "L4 and L5 laminectomies"; "abandoned fractured left S1 pedicle screw fragment"; and "interbody graft at L5-S1." (*Id*. at PAGEID 801, citing Tr. 318, 328, 343, 618, 676). While this evidence establishes that plaintiff suffers from a severe spinal disorder, the imaging results do not show compromise of a nerve root as required by Listing 1.04A. *See Starkey v. Comm'r of Soc. Sec*., No. 2:20-cv-5213, 2021 WL 5996879, at *9 (S.D. Ohio Dec. 20, 2021), *report and recommendation adopted*, 2022 WL 36900 (S.D. Ohio Jan. 4, 2022) (finding the failure to document evidence of nerve root compression "ends the inquiry as to Listing 1.04A") (citing *Smith-Johnson v. Comm'r of Soc. Sec*., 579 F. App'x 426, 432-33 (6th Cir. 2014)). *See also Angela K.C. v. Comm'r of Soc. Sec*., No. 2:20-cv-5184, 2022 WL 109345, at *7 (S.D. Ohio Jan. 12, 2022) ("Because Plaintiff did not show evidence of nerve root compression, the ALJ's finding that Listing 1.04 was not satisfied is supported by substantial evidence.").

Plaintiff also argues that "[m]ultiple clinical examinations by [plaintiff's] physicians also revealed severe neurological findings, including neuro-anatomic distribution of pain; reduced range of motion; radiculopathy; numbness, and weakness in his lower extremities." (Doc. 13 at PAGEID 801-02, citing Tr. 445, 454, 458, 463, 481, 486, 490-91, 594, 618-19, 750).[7] Those records, however, do not show all of the requisite findings of Listing 1.04A or the simultaneous, sustained symptoms of nerve root compression.

Plaintiff's citation to 2017 treatment records do not support his argument. A February 9, 2017 treatment note shows plaintiff reported "continued improvement in his low back pain with continued complete resolution of his radicular leg pain." (Tr. 458). On physical examination,

---

[7] The Court notes that Tr. 463, which is a November 1, 2016 treatment note between plaintiff and Dr. Zerick, occurred prior to the disability onset date. (Tr. 463).

plaintiff's gait and stance were normal, he was ambulating with no assistive device, and he had 5/5 motor strength bilaterally in his lower extremities.  (*Id*.).  Similarly, in an August 22, 2017 treatment note, plaintiff reported he was "doing very well, with continued improvement in his low back pain."  (Tr. 454).  Plaintiff further reported his back surgery was "life changing" and he was doing "so much better[.]"  (*Id*.).  Plaintiff stated he was "able to get back to work" and while he had "some low back pain with prolonged sitting and standing," plaintiff felt that he was "continuing to improve."  (*Id*.).  Plaintiff denied pain, numbness, tingling, or weakness in his hips, buttocks, or legs.  (*Id*.).  On physical examination, plaintiff's gait and stance were normal, he was ambulating with no assistive device, and he had 5/5 motor strength bilaterally in his lower extremities.  (*Id*.).

The November 16, 2017 treatment record cited by plaintiff relates to his medication management for "ADHD," "Hypertension (Cardio)," and "Anxiety."  (Tr. 753).  Nowhere in this treatment note, other than notations of plaintiff's impairments within the "Medical History" portion of the note (Tr. 750), does this treatment note mention or assess plaintiff's physical impairments relating to Listing 1.04A.  (*See* Tr. 749-56).  Further, plaintiff's physical examination on this date included no findings pertaining to plaintiff's musculoskeletal impairments at issue in Listing 1.04A.  (Tr. 754).  Accordingly, plaintiff's 2017 treatment notes do not show the limitation of motion, motor loss, reflex loss, sensory loss, or positive straight leg raising needed for Listing 1.04A.

Plaintiff also cites to a June 7, 2019 emergency room record showing he complained of low back pain following "manual labor and roofing for the last 4 or 5 weeks."  (Tr. 445).  On physical examination, plaintiff exhibited right SI area tenderness to palpation with no CVA tenderness or vertebral tenderness, and he had a normal range of motion and no noted deformity.

16

(Tr. 448). Notably, the emergency department records do not document neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, sensory or reflex loss, positive straight leg raise tests in both the sitting and supine positions, or radicular symptoms upon examination. (Tr. 445-450).

Likewise, plaintiff's citations to 2020 records fails to show the required Listing 1.04A findings. Two of the treatment notes cited by plaintiff document virtual telemedicine appointments between plaintiff and Dr. Zerick. (Tr. 486, 490-91). As the Commissioner correctly states (Doc. 15 at PAGEID 819), these appointments included no physical examinations of plaintiff as they were conducted over the telephone. Rather, these treatment records contain plaintiff's subjective reports of pain to Dr. Zerick and an overview of imaging results. Nothing in these treatment notes support plaintiff's argument that plaintiff met or equaled all of the criteria under Listing 1.04A. Plaintiff also cites a September 2020 physical therapy evaluation documenting weakness (Tr. 619), but two months later plaintiff exhibited full motor strength, and normal reflexes, muscle tone, and gait. (Tr. 593-94).

In sum, plaintiff has not produced evidence of simultaneous, sustained symptoms of nerve root compression set forth in Listing 1.04A as required under AR 15-1(4). Plaintiff has not introduced evidence of neuro-anatomic distribution of pain over a 12-month period. The evidence cited by plaintiff likewise does not establish sustained limitation of motion. Finally, plaintiff has not cited any evidence of (1) "motor loss (atrophy with associated muscle weakness or muscle weakness)," (2) "positive straight-leg raising test (sitting and supine)," and (3) "sensory or reflex loss" resulting from his lumbar impairment over a sustained period of time. To show motor loss as required by Listing 1.04, the claimant must demonstrate "atrophy associated with muscle weakness." *Miller v. Comm'r of Soc. Sec.*, 848 F. Supp. 2d 694, 709

(S.D. Ohio 2011). Muscle atrophy is not documented in the record, and plaintiff fails to point to any evidence to the contrary. In addition, plaintiff fails to point to evidence showing positive straight leg raising tests (sitting and supine) as Listing 1.04A requires. (*See* Tr. 715: "straight leg raise negative bilaterally"). *See Miller*, 848 F. Supp. 2d at 709 (the plaintiff could not meet Listing 1.04 where she did "not point to any positive straight leg raising tests in both the sitting and supine positions"). Finally, plaintiff fails to point to medical evidence of record documenting sensory or reflex loss. The ALJ's finding that plaintiff's spinal impairments did not meet all of the required elements of Listing 1.04A is therefore supported by substantial evidence, and plaintiff's first assignment of error is overruled.

## 2. Whether the ALJ's RFC is supported by substantial evidence

In the second assignment of error, plaintiff alleges the ALJ's RFC is not supported by substantial evidence. (Doc. 13 at PAGEID 805-08). Plaintiff argues the ALJ found plaintiff capable of performing "light work," which plaintiff contends requires standing and/or walking for a total of approximately six hours out of an eight-hour workday. (*Id.*, citing Soc. Sec. Ruling 83-10). As best the Court can discern, plaintiff argues the ALJ's RFC is not supported by substantial evidence because the ALJ's RFC restricts plaintiff to standing and/or walking for four hours in an eight-hour workday. (*Id.*). Plaintiff contends that "the consistent evidence of the record does not support a finding that [he] has the capacity or the ability to sustain the standing and walking requirement of 'light work' and the ALJ's residual functional capacity determination is not supported by substantial evidence." (*Id.* at PAGEID 807).

The Commissioner argues that the ALJ's RFC is supported by substantial evidence. (Doc. 15 at PAGEID 821-24). The Commissioner agrees with plaintiff that he is limited to standing and/or walking only four hours in an eight-hour workday. (*Id.* at PAGEID 824). The

18

Commissioner points to the medical opinions of the state agency physicians who opined plaintiff could perform light work but was limited to standing and/or walking for only four hours in an eight-hour workday. (*Id.*, citing Tr. 31). The Commissioner maintains that the ALJ's RFC is consistent with the VE's testimony that plaintiff could perform light work despite the reduced standing/walking requirement. (*Id.*, citing Tr. 57-59). The Commissioner further argues that plaintiff's "argument ignores the vocational expert's additional testimony that an individual with greater limitations than Plaintiff could perform sedentary work." (*Id.*, citing Tr. 59-60).

The RFC assessment is an evaluation of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It is well-established that the ALJ determines a claimant's RFC. *See* 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record"); 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity"); *see also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006).

Here, the ALJ's RFC limited plaintiff, in pertinent part, to "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [plaintiff] can stand and/or walk for 4 hours in an 8 hour work day with normal breaks and sit for 6 hours in an 8 hour workday. . . ." (Tr. 27). Under the regulations cited by the ALJ:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or

wide range of light work, you must have the ability to do substantially all of these activities. . . .

20 C.F.R. §§ 404.1567(b), 416.967(b).  "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (1983).  In contrast, at the sedentary work level, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  *Id*. at *5.  Where, as here, a claimant's exertional abilities falls between different categories of physical exertion, SSR 83-12 specifies:

> Where an individual's exertional RFC does not coincide with the definition of any one of the ranges of work as defined in sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. . . .  Where the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource.

SSR 83–12, 1983 WL 31253 at *2.

Plaintiff argues the ALJ's RFC is not supported by substantial evidence because an RFC for only four hours standing/walking precludes light work.  (Doc. 13 at PAGEID 805-07).  Plaintiff's argument is premised on the misconception that the ALJ found an RFC for a full range of light work.  Instead, the ALJ's RFC is for a reduced range of light work, which includes the lifting requirements for light work under the regulations (no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds) and a range of walking/standing in between the light and sedentary levels of exertion.

The Sixth Circuit Court of Appeals and numerous courts within this district have rejected arguments similar to plaintiff's.  For example, in *Michelle V. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5149, 2023 WL 2399448, at *5 (S.D. Ohio Mar. 8, 2023), the Court upheld an RFC for a

limited range of light work that included no more than walking two hours a day. The Court in

*Michelle V.* explained:

> [I]t is well settled in the Sixth Circuit that there does not exist a dichotomy between
> light and sedentary work, such that if a plaintiff could not perform a full range of
> light work, she only must be able to do sedentary work. *Blankenship v. Comm'r of
> Soc. Sec.*, 624 Fed. App'x 419, 429 (6th Cir. 2015) (upholding the ALJ's
> determination that plaintiff could perform "light work" while only standing or
> walking for only two hours in an eight-hour workday). It is not one or the other,
> because the courts recognize that there are a substantial number of jobs available in
> the national economy for *modified* light work. *Icke v. Comm'r of Soc. Sec.*, No.
> 1:16-cv-1208, 2017 WL 2426246, at * 7-8 (N.D. Ohio May 16, 2017), *report and
> recommendation adopted*, No. 1:16-cv-1208, 2017 WL 2418729 (N.D. Ohio June
> 2, 2017). Here, the ALJ consulted a vocational expert, who testified that there were
> still a number of jobs in the national economy that qualified as "light work" which
> met the modifications required for Plaintiff to work within her physical ability.
> Therefore, the ALJ did not err by concluding simultaneously that Plaintiff could
> perform "light work" while walking no more than two hours a day and being limited
> to lifting the weights outlined in the federal regulation.

*Michelle V. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5149, 2023 WL 2399448, at *5 (S.D. Ohio Mar.

8, 2023). *See also Amy B. v. Comm'r of Soc. Sec.*, No. 1:22-cv-00486, 2023 WL 2445306, at *6

(S.D. Ohio Mar. 10, 2023) ("[C]ourts have consistently upheld an ALJ's conclusion that a

claimant who otherwise satisfies the exertional requirements of light work can do a reduced

range of such work when limited by a sit-stand option.") (citing cases); *Brown v. Comm'r of Soc.

Sec.*, No. 2:20-cv-424, 2021 WL 940287 (S.D. Ohio Mar. 12, 2021) (rejecting argument that

RFC restricting plaintiff to standing and/or walking for four hours in an eight-hour workday, was

inconsistent with the ability to do light work). As in *Michelle V.*, the ALJ here consulted a VE

who testified there were a substantial number of jobs in the national economy given an RFC for a

limited range of light work that including standing/walking for four hours in an eight-hour

workday. Plaintiff has not directed the Court to any authority to the contrary.

Accordingly, plaintiff's argument that the ALJ's RFC is not supported by substantial evidence due to the alleged inconsistency between the definition of "light work" and the crafted stand and/or walk limitation is without merit.

To the extent plaintiff argues the ALJ's RFC is not supported by substantial evidence because plaintiff lacks the ability to stand and/or walk for four hours in an eight-hour workday, the Court disagrees. Plaintiff points to several treatment records in support of this argument. (Doc. 13 at PAGEID 807, citing Tr. 318, 328, 343, 445, 454, 458, 463, 481, 486, 490-91, 594, 618-19, 676, 750).[8] However, plaintiff fails to point to specific portions of these records identifying any standing or walking limitations. Rather, the medical evidence of record consistently documents plaintiff's ability to stand and walk for extended periods of time. (*See* Tr. 631: "Patient says he is able to ambulate for up to 4 miles with no major issues"; Tr. 633: "Pt reports home exercise compliance and walking for several miles daily for exercise"; Tr. 700: "walking" "5-6 times per week" "30-45 minutes/day"). In addition, state agency physical consultant Dr. Gerald Klyop opined that plaintiff could stand and walk for a total of four hours in a normal 8-hour workday with normal breaks. (Tr. 93). The ALJ found Dr. Klyop's opinion on this restriction persuasive. (Tr. 31). Plaintiff does not challenge the ALJ's evaluation of the state agency physical consultant in his statement of specific errors.

The ALJ thoroughly reviewed the medical evidence of record and concluded that plaintiff had the ability to stand and/or walk four out of eight-hours in a workday. (Tr. 28-31). Plaintiff has not shown that the ALJ erred by failing to fully account for his alleged impairments and resulting limitations in the RFC finding. Plaintiff has not shown, or identified any evidence in the record, that the evidence before the ALJ required the inclusion of greater limitations than

---

[8] The Court notes that these cited treatment records and imaging results are the same records plaintiff cites in support of his first assignment of error. (*See* Doc. 13 at PAGEID 802).

those found by the ALJ with regard to standing and walking. Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error regarding the ALJ's RFC assessment is overruled.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 13) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 4/19/2023

Karen L. Litkovitz
Chief United States Magistrate Judge